J-S37027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :            PENNSYLVANIA
                                           :
             v.                       :
                                           :
                                           :
DEVON HILL                      :
                                           :
               Appellant        :     No. 3173 EDA 2023

Appeal from the Judgment of Sentence Entered December 8, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000968-2020

BEFORE: BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                 **FILED NOVEMBER 5, 2024**

Devon Hill (Appellant) appeals from the judgment of sentence imposed following his convictions (a) by a jury of one count each of aggravated assault, possession of an instrument of crime, firearms not to be carried without a license, carrying a firearm on public property in Philadelphia, simple assault, and recklessly endangering another person; and (b) by the trial court of one count of possession of a firearm by a prohibited person.[1] We affirm.

The trial court detailed the evidence presented at trial as follows:

> On [October] 5, 2018, [Appellant] followed [] Abdullah Thomas [(Mr. Thomas or the victim) on foot] along a busy city street [in Philadelphia]. When Mr. Thomas turned onto a side street, [Appellant] shot him multiple times in the leg and abdomen. Mr. Thomas endured surgery, months of pain, and

---

[1] *See* 18 Pa.C.S.A. §§ 2702(a)(1), 907(a), 6106(a)(1), 6108, 2701(a), 2705, 6105(a)(1).

physical therapy to regain his ability to walk. N.T., 08/29/2023, at 153-55.

**Surveillance videos from the area captured all of the events leading up to and after the shooting.** The location of the shooting was immediately off-camera. The events in question happened on October 5, 2018, at approximately 5:20 in the evening. Mr. Thomas, dressed in black clothing, walked [] southbound on Germantown Avenue coming from Lehigh Avenue, accompanied by an unnamed man in a blue jacket. Ex. C-9 [(photo)]; Ex. C-12 [(surveillance video)], at 0:18-0:23; N.T., 08/29/2023, at 150[; *see also* N.T., 08/29/2023, at 161-64 (Mr. Thomas testifying he did not know the man in the blue jacket)]. **Trailing behind them was** [**Appellant**]**, dressed in a white shirt and jeans.** Ex. C-18 [(photo)]; Ex. C-12, at 0:21-0:38; N.T., 08/30/2023, at 202[]. [Appellant] crossed Huntingdon Street and continued down Germantown Avenue, picking up [his] pace to catch up to Mr. Thomas and his companion. Ex. C-12[, at 0:45-0:50]; *see also* Ex. C-21; *see generally* Ex. C-10 [(photo)]. After turning onto a side street, Alder Street, Mr. Thomas noticed [Appellant] jogging to catch[ ]up to them. Ex. C-12, at 0:39-0:[49]; *see generally* Ex. C-10. [Appellant] caught up to [Mr. Thomas and his companion] just as they exited the camera's view. [Ex. C-12] at 0:47-0:49. **Within three seconds, the shooting occurred off camera.** *Id.* at 0:49-0:51. [**Immediately after the shooting, Appellant**] **ran northbound** back [to] Germantown Avenue. N.T., 08/31/2023, at 45.

[Surveillance video also showed that immediately after the shooting,] Mr. Thomas' companion (the man in the blue jacket)[, accompanied by] two men dressed primarily in black[,] chased [Appellant] … along Germantown Avenue. Ex. C-12, at 1:06-2:10. At Huntingdon Street, [Appellant] jumped into a silver-gray car[,] which immediately drove away. *Id.* [at 1:30-1:50.] The man in the blue jacket was carrying a firearm. *Id.* at 1:16-1:46. [The man in the blue jacket] fired in the direction of the silver-gray car. [*Id.* at 1:48-50;] N.T., 08/31/2023, at []20-21. He put the gun away once the car drove away. Ex. C-12, at 1:50-1:58. …

Meanwhile, after being shot, Mr. Thomas ran through a small park towards North Warnock Street and collapsed on the ground. N.T., 08/29/2023, at 143, 223. Ms. Rhonda Cherry [(Ms.

Cherry)], a resident in the area, heard the shots and acted to help Mr. Thomas. *Id.* at 224. [Ms. Cherry] saw a man in a white shirt and blue jeans carrying a black object[, and] running toward Germantown Avenue. *Id.* at 225-26, 228.

During a police interview at the hospital, Mr. Thomas recounted that [immediately prior to the shooting,] he "heard someone approaching me from behind." [Ex. C-14, at 2. Mr. Thomas] reported that he turned around and this "guy pulled out a gun and started shooting at me." [*Id.* Mr. Thomas] described the shooter as a black man holding a black object. *Id.*; *see also* N.T., 08/30/2023, at 40. [**Mr. Thomas**] **was unable to identify** [**Appellant**] **as the shooter, both during the photo array presented to him at the hospital and at trial**.[2]

At [] trial, [Appellant testified as the sole defense witness, and] identified himself a[s] the person in the [surveillance] video wearing the white shirt and jeans. [N.T., 08/30/2023,] at 202…. [Appellant] denied being the shooter, and he denied having a gun that day. N.T., 08/30/2023, at 224. [Appellant] testified [] he was in that neighborhood to purchase marijuana. *Id.* at 211. He explained that he approached Mr. Thomas' companion to find a marijuana dealer. N.T., 08/31/2023, at 32, 35-36. [Appellant] reported that the shooter did not come from his direction, but actually came from the opposite direction on Alder Street. N.T., 08/30/2023, at 211.

On the date of the shooting, [Appellant] did not have a license to carry a firearm in Pennsylvania. Ex. C-38. Also, [Appellant] has a prior conviction … [for a drug offense], Ex. C-39, which made him a person prohibited from possessing a firearm on the date of the shooting.

_____

[2] At trial, Mr. Thomas testified he "never looked at the shooter" and was unable to identify the shooter. N.T., 8/29/23, at 158. However, Mr. Thomas specifically denied that Appellant was the shooter. *Id.* at 158, 169, 171, 176. Mr. Thomas stated he "didn't get [a] good glimpse [of the shooter], but I know for sure … it wasn't [Appellant]. I would remember it." *Id.* at 170; *see also id.* at 171 (Mr. Thomas observing that Appellant has prominent facial tattoos, which the shooter did not have).

Trial Court Opinion, 4/15/24, at 1-3 (emphasis and footnote added; footnote in original omitted).

Following Appellant's arrest, the Commonwealth charged him on December 20, 2018, with the above-mentioned offenses, as well as attempted murder.[3]  Appellant's original jury trial occurred in February 2022, but ended in a mistrial.[4]

Appellant's retrial occurred on August 29, 2023 – September 1, 2023.[5,6] The jury ultimately found Appellant not guilty of attempted murder and guilty of the remaining charges detailed above.  The trial court found Appellant guilty of possession of a firearm by a prohibited person.  The court deferred sentencing for the preparation of a pre-sentence investigation report and a mental health evaluation.

_____

[3] **See** 18 Pa.C.S.A. §§ 901(a), 2502.

[4] The circumstances underlying the mistrial are not relevant to the instant appeal.  Briefly, the trial court granted a mistrial after a Commonwealth witness offered testimony that was barred by a pre-trial order. **Commonwealth v. Hill**, 292 A.3d 1086, 1267 EDA 2022 (Pa. Super. 2023) (unpublished memorandum at 3).  However, the trial court subsequently denied Appellant's motion to bar retrial on double jeopardy grounds.  **Id.** Appellant filed an interlocutory appeal; this Court affirmed and remanded for retrial.  **See generally id.**

[5] Trial was bifurcated, with the trial court trying Appellant on the charge of possession of a firearm by a prohibited person, and the jury trying Appellant on the remaining charges.

[6] Ms. Cherry passed away prior to Appellant's retrial.  N.T., 8/29/23, at 218. Accordingly, the Commonwealth read Ms. Cherry's prior testimony at Appellant's first trial into the record.  **See id.** at 224-42.

On December 8, 2023, the trial court sentenced Appellant to an aggregate 10 to 20 years in prison, followed by 7 years of probation. Significantly, Appellant did not file post-sentence motions. *See* N.T. (sentencing), 12/8/23, at 45 (Appellant's counsel stating Appellant did not request the filing of post-sentence motions; rather, Appellant "asked for [an] appeal to be filed."). This timely appeal followed. On December 11, 2023, Appellant filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[7] The trial court issued its Rule 1925(a) opinion on April 15, 2024.

Appellant presents two issues for our review:

1. Whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was insufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offenses beyond a reasonable doubt on all charges?

2. Whether the verdict was against the greater weight of evidence as a matter of law to establish the [Appellant's] guilt beyond a reasonable doubt on all charges?

Appellant's Brief at 2 (issues reordered).

Appellant first claims none of his convictions are supported by sufficient evidence, where the Commonwealth failed to prove his identity as the perpetrator. *See id.* at 19-23. Appellant argues the evidence, even when

_____

[7] The trial court did not order Appellant to file a Rule 1925(b) concise statement.

viewed in the light most favorable to the Commonwealth, was insufficient to prove his identity as the shooter beyond a reasonable doubt. *See id.* at 22-23. Pointing to the above-described surveillance video evidence, Appellant emphasizes that "the location of the shooting was immediately off-camera." *Id.* at 23; *see also* Ex. C-12 at 0:49-0:51. Appellant further emphasizes that "[Mr.] Thomas was unable to identify [Appellant] as the shooter, both during the photo array presented to him at the hospital and at trial." Appellant's Brief at 23. Finally, Appellant contends his trial "testimony should have been given greater weight."[8] *Id.* at 22.

The Commonwealth counters each of Appellant's convictions is supported by sufficient evidence, and it proved Appellant's identity as the perpetrator beyond a reasonable doubt. *See* Commonwealth Brief at 6.[9]

"Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary."

---

[8] Appellant's claim that the fact-finders should have given more weight to his testimony implicates the weight, not sufficiency, of the evidence. *See Commonwealth v. Gibbs*, 981 A.2d 274, 281-82 (Pa. Super. 2009) ("An argument that the finder of fact should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence.") (citing *Commonwealth v. W.H.M.*, 932 A.2d 155, 160 (Pa. Super. 2007)). Accordingly, as Appellant also raises a weight challenge on appeal, we address this claim *infra*, in connection with our analysis of the weight claim.

[9] The Commonwealth states in its brief argument section that it agrees with the reasoning the trial court advanced in its Pa.R.A.P. 1925(a) opinion. Commonwealth Brief at 6.

*Commonwealth v. Rosario*, 307 A.3d 759, 764-65 (Pa. Super. 2023)

(citation omitted).

> Our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.
>
> In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Peters*, 320 A.3d 1231, 1236 (Pa. Super. 2024) (*en banc*) (internal citations and brackets omitted).

Importantly, the Commonwealth "may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019) (citation omitted); *see also Commonwealth v. Arrington*, 86 A.3d 831, 840 (Pa. 2014) ("The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, and the [fact-finder], in passing upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence."). "[T]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence[,] coupled with the reasonable

inferences drawn therefrom[,] overcomes the presumption of innocence." ***Commonwealth v. Sebolka***, 205 A.3d 329, 337 (Pa. Super. 2019) (citation omitted). This Court has emphasized that "[a]lthough a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." ***Commonwealth v. Stokes***, 78 A.3d 644, 649 (Pa. Super. 2013) (citation omitted).

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted). It is settled that "[**e**]**vidence of identi**[**ty**] **need not be positive and certain to sustain a conviction**." ***Commonwealth v. Orr***, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (emphasis added; citation omitted). In ***Orr***, this Court further explained:

> Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. ***Commonwealth v. Minnis***, 458 A.2d 231, 233-34 (Pa. Super. 1983). … Given additional evidentiary circumstances, "any indefiniteness and uncertainty in the identification testimony goes to its weight." ***Id.*** at 233.

***Orr***, 38 A.3d at 874 (some citations modified).

Instantly, the trial court opined the Commonwealth presented sufficient evidence to prove Appellant's identity as the perpetrator beyond a reasonable doubt:

[T]he evidence presented to the jury was such that it was a reasonable inference for the jury to believe that [Appellant] was the individual who shot Mr. Thomas. **The video showed [Appellant] approaching Mr. Thomas from behind immediately before the shooting occur**[**r**]**ed**. Ex. C-12[, at 0:45-0:49]. **Mr. Thomas told police that the shooter approached him from behind.** Ex. C-14, at 2. No one else [depicted in] the video came from that direction. [*See generally*] Ex. C-12. It is crucial to note that **the shooting occurred within three (3) seconds of** [Appellant] **leaving the camera view**. *Id.* at 0:49-0:51. Also, [Appellant] reached for his pocket or right side just before stepping off[-]camera. *Id.* at 0:47-0:49.

Immediately after the shooting, Ms. Cherry saw a man wearing a white shirt and blue jeans fleeing toward Germantown Avenue carrying a black object. N.T., 08/29/2023, at 225-26, 228. No one else on the video wore an outfit similar to [Appellant's]. [*See generally*] Ex. C-12. Notably, [**Appellant**] **fled the scene being chased by three men**, including at least one who was armed. Ex. C-12[, at 1:11-1:54].

The evidence along with reasonable inferences was such that the finders of fact could find every element of the crime[s] beyond a reasonable doubt. The evidence was such that the finders of fact could reasonably infer that [Appellant] was the shooter. So viewed, the evidence was sufficient to sustain the verdict.

Trial Court Opinion, 4/15/24, at 5-6 (emphasis added).

The trial court's reasoning is supported by the record and we agree with its conclusion. *See id.* Although Mr. Thomas was unable or unwilling to identify his assailant, the totality of the circumstantial evidence, when viewed in a light most favorable to the Commonwealth, established Appellant's identity as the perpetrator. *See*, *e.g.*, *Commonwealth v. Robertson*, 874 A.2d 1200, 1206 (Pa. Super. 2005) ("[E]ven if the Commonwealth presented only circumstantial evidence and offered no positive identification of the

assailant, we may not weigh the evidence and substitute our judgment for the fact-finder as long as the evidence was sufficient to prove [the accused's] guilt."); *Smith*, 206 A.3d at 557 ("The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence."). Significantly, the fact-finders viewed surveillance video that depicted Appellant (a) pursuing Mr. Thomas on foot from behind immediately prior to the shooting; and (b) running away from the scene of the shooting, chased by three men, mere seconds after it occurred. Ex. C-12, at 0:44-0:49, 1:11-1:54; *see also* N.T., 8/31/23, at 45. Appellant's flight provided additional circumstantial evidence of his guilt. *See Commonwealth v. Perez*, 220 A.3d 1069, 1078 (Pa. Super. 2019) (*en banc*) (noting that flight from the scene of a crime can constitute circumstantial evidence of consciousness of guilt). *Cf. Commonwealth v. Hargrave*, 745 A.2d 20, 23-24 (Pa. Super. 2000) (holding flight alone is insufficient to prove guilt, but noting that the finder of fact may consider flight, "along with other proof, from which guilt may be inferred." (citations omitted)). Because the evidence established Appellant's identity beyond a reasonable doubt, his sufficiency challenge does not merit relief.

In his second issue, Appellant claims all of his convictions are against the weight of the evidence. *See* Appellant's Brief at 16-18. Before addressing the merits of this claim, however, we must determine whether Appellant preserved it for review. As stated above, Appellant did not file post-sentence

motions. Nor did he raise a challenge to the weight of the evidence at any time before the trial court.

It is well-settled that

[a] claim challenging the weight of the evidence "shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A)(1)-(3). **The failure to preserve a weight claim will result in waiver**, even if the trial court addresses the claim in its opinion for this Court. *See Commonwealth v. Thompson*, … 93 A.3d 478, 491 (Pa. Super. 2014) ("Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion.") (citations omitted).

*Commonwealth v. Barkman*, 295 A.3d 721, 736 (Pa. Super. 2023) (emphasis added); *see also Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012). Because Appellant failed to raise a weight claim with the trial court before sentencing or file a post-sentence motion challenging the verdict as against the weight of the evidence, this claim is waived. *See id.*; *see also* Trial Court Opinion, 4/15/24, at 6 ("[Appellant] did not raise [his weight of the evidence] issue either before or after sentencing; therefore, the issue is waived.").

Even if Appellant had preserved his weight claim, however, we would conclude it does not merit relief. Appellant repeats the same claims detailed above in connection with his sufficiency challenge; *i.e.*, that (a) Appellant's trial "testimony should have been given greater weight"; and (b) "[Mr.] Thomas was unable to identify [Appellant] as the shooter, both during the

- 11 -

photo array presented to him at the hospital and at trial." Appellant's Brief at 18.

We apply the following standard of review to weight of the evidence claims:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (citations and quotation marks omitted); *see also Commonwealth v. Smith*, 146 A.3d 257, 265 (Pa. Super. 2016) (stating in order for an appellant to prevail on a challenge to the weight of evidence, he must establish that the evidence supporting a conviction is "so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." (citation omitted)).

The Pennsylvania Supreme Court has consistently held,

> [b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination of whether the verdict is against the weight of the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (citation omitted); *see also Commonwealth v. Rabold*, 920 A.2d 857, 860 (Pa. Super. 2007) ("One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." (citation omitted)).

Here, the trial court rejected Appellant's weight challenge in its opinion:

The crux of [Appellant's] contention is that the evidence is inadequate to prove that [Appellant] was the shooter. However, there is actually scant evidence in support of this theory. The primary evidence in support of [the defense's theory of the case] was [Appellant's] own testimony. He gave an uncorroborated account that the shooter came from the opposite direction [on Alder Street]. N.T., 08/30/2023, at 211. In fact, the victim's account to police directly contradicted [Appellant's] version of events. Ex. C-14, at 2 [(the victim stating in his police interview that he "heard someone approaching [him] from behind" immediately before the shooting)].

There is also the fact that the victim could not directly identify [Appellant] as the shooter, Ex. C-14, and testified [at trial] that [Appellant] did not shoot him. N.T., 08/29/2023, at 176-77. [Appellant] also noted that Mr. Thomas never described his shooter as having face tattoos[,] features which are prominently displayed on [Appellant's] face. *Id.* at 171. However, this portion of Mr. Thomas' testimony was self-contradictory in several important ways. First, he said that he never got a glimpse of the shooter. *Id.* at 168. Then[, Mr. Thomas] said that he could not even tell the race of the person who shot him. *Id.* [Mr. Thomas further] said that, "I didn't get [a] good glimpse, but I know for sure … it wasn't [Appellant]. I would remember it." *Id.* at 170.

The [trial c]ourt acknowledges that there are inconsistencies in the testimony and other evidence, but none were so clearly of greater weight that to ignore them or give them equal weight would deny justice to [Appellant]. Inconsistencies within testimony or between testimony and prior statements are not

- 13 -

unusual in any case, and particularly so in a case involving a victim who did not get a clear look at his assailant, in an event that occurred five (5) years prior to trial, and after which [the victim] sustained serious physical injuries including repeated loss of consciousness. ***See***, ***e.g.***, Ex. C-17, Ex. C-5.

The finders of fact had the opportunity to consider all of the competing evidence. After consideration of everything, the finders of fact determined that the totality of evidence was adequate to prove the elements of the crimes charged beyond a reasonable doubt. The evidence in support of the verdict was not so tenuous, vague, or uncertain that the resulting verdict shocked the conscience, nor did it deny justice; therefore, the verdict was not against the weight of the evidence.

Trial Court Opinion, 4/15/24, at 7-8.

Upon review, the trial court's reasoning is supported by the record, and we discern no abuse of its discretion in rejecting Appellant's weight claim. ***See id.*** The fact-finders were free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. ***Gonzalez***, 109 A.3d 711, 723. We decline Appellant's invitation to act as fact-finder, reweigh the evidence, and disturb credibility findings based on a cold record and Appellant's undeveloped argument.[10] ***See Commonwealth v. Santiago***, 980 A.2d 659, 664 (Pa. Super. 2009) (holding trial court did not abuse its discretion in rejecting appellant's weight challenge where he asked this Court to reweigh

_____

[10] Appellant fails to explain how the verdicts were against the weight of the evidence, or in what way the trial court abused its discretion in denying his weight claim. Rather, his argument consists solely of his assertion that his trial "testimony should have been given greater weight." Appellant's Brief at 18.

the evidence). The evidence was not so tenuous, vague, and uncertain that the verdicts shock our conscience. ***Smith***, 146 A.3d at 265.

Further, to the extent that there were conflicts in the trial testimony, the fact-finders ostensibly accepted the Commonwealth's theory of the case and found Appellant's self-serving account of the events of October 5, 2018, to be incredible. ***See Commonwealth v. Sanchez***, 262 A.3d 1283, 1288-89 (Pa. Super. 2021) ("it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record." (citations omitted)). We, therefore, would conclude that the trial court did not abuse its discretion in determining that the weight of the evidence supported the verdicts.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/5/2024</u>